# UNITED STATES DISTRICT COURT
### for the
Eastern District of Wisconsin

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| Rakesh Jyoti Saran, a.k.a. Johar Saran (DOB: XX/XX/1962) | ) ) ) ) ) | Case No. 20 MJ 190 |
| _____ *Defendant(s)* | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ multiple dates _____ in the county of _____ Milwaukee _____ in the
_____ Eastern _____ District of _____ Wisconsin _____ , the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| Title 21, United States Code, Sections 841(a)(1), 841(h), 843(c)(2)(A), and 846. | (1) conspiracy to distribute, manufacture, dispense, or possess with the intent to manufacture, distribute, or dispense a controlled substance; (2) distribution of a controlled substance; (3) conspiracy to deliver, distribute, or dispense a controlled substance by means of the Internet; and, (4) distribution of a controlled substance by means of the Internet. |

This criminal complaint is based on these facts:

Please see the attached affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Scott Simons, Task Force Officer (DEA)
*Printed name and title*

Sworn via telephone; transmitted via email
pursuant to Fed. R. Crim. P. 4.1

~~Sworn to before me and signed in my presence.~~

Date: _____ 08/24/2020 _____

City and state: _____ Milwaukee, Wisconsin _____

_____
*Judge's signature*

William E. Duffin, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT

I, Scott Simons, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION

1.      I make this affidavit for the limited purpose of establishing probable cause for the issuance of a criminal complaint and arrest warrant charging defendant **Rakesh Jyoti Saran** (DOB: XX/XX/1962), a.k.a. **Johar Saran**, with conspiracy to distribute, manufacture, dispense, or possess with the intent to manufacture, distribute, or dispense a controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846, distribution of a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), conspiracy to deliver, distribute, or dispense a controlled substance by means of the Internet, in violation of Title 21, United States Code, Sections 841(h), 843(c)(2)(A), and 846, and distribution of a controlled substance by means of the Internet, in violation of Title 21, United States Code, Section 843(c)(2)(A).

## BACKGROUND AND EXPERIENCE

2.      I am a Task Force Officer assigned to the Milwaukee District Office of the Drug Enforcement Administration (DEA) as a member of the Tactical Diversion Squad (TDS). I specialize in pharmaceutical investigations. I have worked full-time as a federal task force officer for the past 7 years and a full-time law enforcement officer with the Greenfield Police Department for the past 18 years. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, in that I am empowered by law to conduct investigations of and to make arrests for federal felony offenses.

3.      During my tenure as a law enforcement officer, I have been involved in the investigation of drug traffickers in Milwaukee County, in the State of Wisconsin, across the United States, and internationally. I have received training in the investigation of drug trafficking, money laundering, and computer crimes. My training and experience includes the following:

a. Through informant interviews and extensive debriefings of individuals involved in drug trafficking, I have learned about the manner in which individuals and organizations finance, source, purchase, transport, and distribute controlled substances in Wisconsin, throughout the United States, and internationally.

b. I have used my training and experience to locate, identify, and seize multiple types of drugs, drug proceeds, and drug contraband.

c. I know controlled substances, drug paraphernalia, and drug proceeds are sent through the U.S. Postal Service system and other parcel services, such as FedEx and UPS, and I am familiar with many of the methods used by individuals who attempt to use mail services to illegally distribute controlled substances.

d. I have also relied upon informants to obtain controlled substances from drug traffickers and have made undercover purchases of controlled substances.

e. I am familiar with the language used over the telephone and other electronic communications to discuss drug trafficking and know that the language is often limited, guarded, and coded. I know the various code names used to describe controlled substances. I also know that drug traffickers often use electronic devices (such as computers and cellular phones), electronic communication services (such as e-mail and messaging applications), and social media to facilitate these crimes.

f. I know drug traffickers often register phones, mailboxes, bank accounts, electronic communication services, and other instrumentalities of drug trafficking in the names of others, also known as nominees, to evade law enforcement.

g. I know that drug traffickers often keep documents and records about the sourcing, ordering, sale, transportation, and distribution of controlled substances.

h. I know that drug traffickers often use drug proceeds to purchase assets such as vehicles, property, and jewelry. I also know that drug traffickers often use nominees to purchase or title these assets in order to avoid scrutiny from law enforcement officials. I know that drug traffickers often secure drug proceeds at locations within their dominion and control, such as their residences, businesses, and storage facilities, and in safes or other secure containers.

i. I know that drug traffickers often attempt to protect and conceal drug proceeds through money laundering, including but not limited to domestic and international banks, securities brokers, service professionals such as attorneys and accountants, casinos, real estate, shell corporations, business fronts, and otherwise legitimate businesses which generate large quantities of currency. I know it is common for drug traffickers to obtain, secrete, transfer, conceal, or spend drug proceeds, such as currency, financial instruments, precious metals, gemstones, jewelry, books, real estate, and vehicles. I know it is common for drug traffickers to maintain documents and records of these drug proceeds, such as bank records, passbooks, money drafts, transaction records, letters of credit, money orders, bank drafts, titles, ownership documents, cashier's checks, bank checks, safe deposit box keys, money wrappers, and other documents relating to the purchase of financial instruments or the transfer

2

of funds. I know drug traffickers often purchase or title assets in fictitious names, aliases, or the names of relatives, associates, or business entities to avoid detection of these assets by government agencies. I know that even though these assets are titled or purchased by nominees, the drug traffickers actually own, use, and exercise dominion and control over these assets. The aforementioned books, records, receipts, notes, ledgers, and other documents are often maintained where the traffickers have ready access. These may be stored in hard copy or soft copy on paper, computers, cellular devices, and other electronic media or electronic storage devices.

j.　　Drug traffickers often use enhanced cryptocurrency, such as Bitcoin, to protect their identities, launder money, and conceal drug proceeds, because of the anonymity provided by cryptocurrency. Bitcoin is a decentralized digital currency without a central bank or single administrator. Payments are sent from user-to-user on the peer-to-peer bitcoin network without the need for intermediaries. These services add layers of anonymity to financial transactions to evade law enforcement.

k.　　I know drug traffickers maintain large amounts of currency, including in readily accessible financial accounts, to finance their ongoing drug business. I know that those involved in drug trafficking or money laundering keep records of their transactions. Because drug trafficking generates large sums of cash, drug traffickers often keep detailed records about the distribution of narcotics and the laundering of proceeds. I also know that drug trafficking and money laundering activities require the cooperation, association, and communication between and among a number of people. As a result, people who traffic in narcotics or launder money for such organizations possess documents that identify other members of their organization, such as telephone books, address books, handwritten notations, telephone bills, and documents containing lists of names and addresses of criminal associates. Such records also provide information about the identities of co-conspirators who launder money and traffick drugs. I also know that drug traffickers commonly maintain addresses or telephone numbers which reflect names, addresses, or telephone numbers of their drug trafficking and money laundering associates in hard copy and soft copy on papers, books, computers, cellular devices, and other electronic media or electronic storage devices.

l.　　I know drug traffickers often use electronic devices, such as telephones, cellular devices, computers, and currency counting machines to generate, transfer, count, record, or store the information described above and conduct drug trafficking and money laundering. I am familiar with computers, cellular devices, pagers, and other electronic media or electronic storage devices and their uses by drug traffickers to communicate with suppliers, customers, co-conspirators, and fellow traffickers. These devices often contain evidence of illegal activities in the form of communication records, voicemail, email, text messages, video and audio clips, location information, business records, and transaction records. I know drug traffickers take, store, preserve, or maintain photographs or videos of themselves, their associates, their property, their drugs, and their drug proceeds. These traffickers usually maintain these photographs or videos on computers, cellular devices, and other electronic media or electronic storage devices. Based upon my training and experience, I know that computer hardware and software may be

3

important to a criminal investigation in two distinct and important respects: (1) the objects themselves may be instrumentalities, fruits, or evidence of crime; and (2) the objects may have been used to collect and store information about crimes. I know the following information can be retrieved to show evidence of use of a computer or smartphone to further the drug trade: system components, input devices, output devices, data storage devices, data transmission devices, and network devices and any data contained within such systems; computer media and any data contained within such media; operating system software, application or access program disks, manuals, books, brochures, or notes, computer access codes, user names, log files, configuration files, passwords, screen names, email addresses, IP addresses, and SIM cards.

m.     I have participated in numerous drug trafficking investigations involving the seizure of computers, cellular phones, cameras, and other digital storage devices, and the subsequent analysis of electronic data stored within these devices. This has led to evidence of the crimes under investigation and corroborated information already known or suspected by law enforcement. I have regularly used electronic evidence to find proof relating to the commission of criminal offenses, including intent, motive, manner, means, and the identity of suspects and conspirators.

n.     I have also participated in the execution of numerous premises search warrants and arrests, where controlled substances, firearms, drug paraphernalia, drug proceeds, electronic devices, and records relating drug trafficking and drug proceeds were seized.

4.     This affidavit is based upon my personal knowledge and upon information reported to me by other federal, state, and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable. Throughout this affidavit, I refer to case agents. Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom I have had regular contact regarding this investigation.

5.     This affidavit is intended to show simply that there is sufficient probable cause for the requested criminal complaint and arrest warrant and does not set forth all of my knowledge about this matter.

**STATUTORY BACKGROUND**

6.     The Ryan Haight Online Pharmacy Consumer Protection Act of 2008 amended the Controlled Substances Act to address online pharmacies, codified at Title 21, United States Code, Section 829. No controlled substance that is a prescription drug as determined by the Federal Food, Drug and

4

Cosmetic Act may be delivered, distributed, or dispensed by means of the Internet without a valid prescription, as required by Title 21, Code of Federal Regulations, Section 1306.09(a). *See* 21 U.S.C. §§ 829(e), 841(a)(1), 841(h), 843(c)(2)(A).

7.     According to Section 829, the term "valid prescription" means a prescription that is issued for a legitimate medical purpose in the usual course of professional practice by a practitioner who has conducted at least 1 in-person medical evaluation of the patient or a covering practitioner. The term "in-person medical evaluation" means a medical evaluation that is conducted with the patient in the physical presence of the practitioner, without regard to whether portions of the evaluation are conducted by other health professionals. The term "covering practitioner" means, with respect to the patient, a practitioner who conducts a medical evaluation (other than an in-person medical evaluation) at the request of a practitioner who has conducted at least 1 in-person medical evaluation of the patient or an evaluation of the patient through the practice of telemedicine within the previous 24 months and is temporarily unavailable to conduct the evaluation of the patient.

8.     The Ryan Haight Online Pharmacy Consumer Protection Act of 2008 also added new provisions to prevent the illegal distribution of controlled substances by means of the Internet, including registration requirements of online pharmacies, Internet pharmacy website disclosure information requirements, and prescription reporting requirements for online pharmacies. *See* 21 C.F.R. § 1301.11(b).

## **PROBABLE CAUSE**

9.     Based on the investigation described below, case agents have identified RAYMOND HAMMOND, who lives at 8360 Sycamore Drive, New Port Richey, Florida 34654, as a person who communicates with drug suppliers overseas, takes customer orders, receives drug payments, and coordinates the shipping of drug parcels with **JOHAR SARAN**, who lives at 2901 Serenity Court, Arlington, Texas 76016 and drives a gray 2008 Mazda CX-9 bearing Texas truck license plate LRC9159 and vehicle identification number JM3TB28AX80139068. SARAN receives the customers' orders from

HAMMOND. SARAN receives bulk controlled substances at his office located at 3630 West Pioneer Parkway, Suite 111, Pantego, Texas 76013. SARAN breaks down the bulk product, prepares the drugs and shipping label for the customers, sends a picture of the prepared drugs to HAMMOND, and SARAN drives the drug parcels to the post office where he ships them to customers.

10.     In February 2015, the Milwaukee District Office of the DEA initiated an investigation into the internet pharmacy GOLDPHARMA24 located at www.goldpharma-24.com, which advertised controlled and non-controlled pharmaceuticals for sale without requiring a prescription for such substances.

11.     Between June 2015 and October 2018, case agents conducted multiple undercover purchases from the GOLDPHARMA24 internet pharmacy. Case agents purchased and received drugs including codeine (a schedule II controlled substance), tapentadol (a schedule II controlled substance), alprazolam (a schedule IV controlled substance), carisoprodol (a schedule IV controlled substance), diazepam (a schedule IV controlled substance), and tramadol (a schedule IV controlled substance). At the time, the majority of these controlled substances were sent from Romania to the United States through the U.S. Postal Service. The undercover agent never received an examination and was never questioned about medical history, current medications, or symptoms that would be required to be prescribed this medication. These medications were sent to the DEA laboratory in Chicago and tested positive for the presence of the indicated drugs.

12.     On January 25, 2018, case agents in partnership with the Romanian National Police, executed approximately 43 search warrants and approximately 12 arrests in Romania to dismantle this supplier.  Hundreds of thousands of controlled pharmaceuticals were seized in the personal residences of two of the co-conspirators, along with customer lists of primarily U.S. customers, post office tracking numbers, and shipping envelopes.

6

13.     After the takedown of the Romanian supplier, case agents continued to conduct undercover purchases from the GOLDPHARMA24 internet pharmacy. Because of the supply disruption, the controlled substances were sent from Singapore and India using the U.S. Postal Service instead of from Romania. The undercover agent never received an examination and was never questioned about medical history, current medications, or symptoms that would be required to prescribe this medication. These medications were sent to the DEA laboratory in Chicago and tested positive for the presence of the indicated drugs.

14.     Case agents were able to identify Sachin Makade, an Indian national, as GOLDPHARMA's new supplier. Case agents identified two email addresses used by this new supplier. On January 10, 2019, the Honorable David E. Jones, United States Magistrate Judge for the Eastern District of Wisconsin, signed federal search warrants for records and information associated with sachinmakade19@gmail.com and sachinmakde19@gmail.com. Those email account records from January 1, 2015 through January 10, 2019 revealed that Sachin Makade operated this new supplier. Makade explained in his emails that he ships pharmaceuticals from India to a warehouse in Singapore. Makade hired employees at this warehouse, opened Singaporean bank accounts, registered multiple Singaporean companies, and established a Singapore post office box, which he used to ship controlled and non-controlled prescription drugs using the Free Trade Zone. Makade's company distributes pharmaceuticals throughout the world but primarily to the United States. A further review of Makade's emails revealed multiple communications with a co-conspirator in the United States using email account larrysjewels2008@gmail.com, later identified as RAYMOND HAMMOND.

15.     Case agents reviewed all emails involving larrysjewels2008@gmail.com. The user identified himself as "Larry Hillman," a payment processor and customer representative for Makade's online pharmacies and other suppliers. This user recruited third-party merchants to process payments for drug purchases. After a customer's drug purchase from Makade, HAMMOND would email the customer

7

and explain the charge on their credit card statement for Larry's Jewels & Gems. HAMMOND said the payment was actually for their drug order, but he directed the customer not to tell their bank the purchase was for drugs because the bank would close the customer's account. The user of larrysjewels2008@gmail.com identified their phone number as (727) 275-0137, their business website as www.larrysjewels.com, and said they were located in the St. Petersburg, Florida area.

16.     Case agents reviewed the website www.larrysjewels.com. The website lists beach jewelry for sale. This website, however, is not functional and does not allow a user to actually purchase any products. Case agents believe this website exists solely to substantiate that a business exists in order to process drug payments. Using open source tools, case agents identified the registrant for domain www.larrysjewels.com as follows:

    a.  LARRY HILLMAN

    b.  Larry's Jewels & Gems LLC

    c.  526 Rosery Road NW, Suite A, Largo, Florida

    d.  (727) 275-0137

    e.  Larrysjewels2008@gmail.com

17.     On May 30, 2019, the Honorable David E. Jones, United States Magistrate Judge for the Eastern District of Wisconsin, signed a federal search warrant for records and information associated with larrysjewels2008@gmail.com. A review of the email account larrysjewels2008@gmail.com, revealed that RAYMOND HAMMOND was the user, and that HAMMOND was processing payments, taking customer orders, and coordinating the shipment of drugs primarily to customers in the United States. HAMMOND was accepting at least fourteen different forms of payment and was conducting at least $55,000 in sales per month based only on the records identified in the emails. The majority of the drug orders were placed via email or websites belonging to others such as Sachin Makade. In approximately April 2019, HAMMOND began requesting orders be placed by text message to (727) 275-0137.

18.     On July 4, 2019, case agents communicated with RAYMOND HAMMOND, via text message at (727) 275-0137, in an undercover capacity under the guise of another drug trafficker wishing to purchase pharmaceuticals from RAYMOND HAMMOND. HAMMOND discussed shipping rates, drugs available for sale, and the quality of oxycodone available. HAMMOND said that he had suppliers in India, Singapore, United Kingdom, Philippines, and California.  HAMMOND told case agents to save the phone number (727) 420-1576 as "Larry Etizolam" and message HAMMOND at that phone number using WhatsApp, a messaging platform. HAMMOND said that messaging through WhatsApp is encrypted and safe, so that they could speak freely. HAMMOND directed case agents not to mention anything about WhatsApp on the websites because HAMMOND's activities on WhatsApp are separate from the websites belonging to his clients.

19.     Case agents viewed the profile photograph for WhatsApp user of (727) 420-1576, and the photograph is of a male subject. Case agents compared this photograph with a photograph of RAYMOND HAMMOND on file with the Florida Department of Transportation and confirmed the WhatsApp profile photograph is that of RAYMOND HAMMOND.  This same photograph of HAMMOND was found in an email sent from the larrysjewels2008@gmail.com email account.

20.     On July 8, 2019, case agents received records from Sprint related to phone number (727) 420-1576, in response to a DEA administrative subpoena. These records identified the subscriber as RAYMOND HAMMOND of 8360 Sycamore Drive, New Port Richey, Florida 34654.

21.     On July 9, 2019, case agents conducted an undercover purchase from HAMMOND on WhatsApp using phone number (727) 420-1576. Case agents purchased 100 tablets of oxycodone 30mg (a schedule II controlled substance) shipped from the Philippines, 200 tablets of carisoprodol 500mg, also known as Soma (a schedule IV controlled substance) shipped from Singapore, and 150 tablets of alprazolam 2mg, also known as Xanax (a schedule IV controlled substance) shipped from India. In

9

connection with the purchase, case agents were instructed via WhatsApp to wire money by Zelle to a bank account associated with email address arlenezelle@gmail.com.

22.     HAMMOND advised case agents that the oxycodone was seized by customs, so HAMMOND shipped case agents a one-pint manufacturer's bottle of promethazine with codeine (a schedule V controlled substance) instead of oxycodone from Texas. HAMMOND refunded case agents a portion of the payment since promethazine with codeine is less expensive than the oxycodone. Case agents received separate shipments of the 200 tablets of carisoprodol 500mg, 150 tablets of Xanax 2mg, and one-pint bottle of promethazine with codeine. The carisoprodol from Singapore and the Xanax from India were shipped from companies affiliated with Sachin Makade. The promethazine with codeine tested positive for the presence of codeine, and the other test results are pending.

23.     Case agents received records from the U.S. Postal Inspections Service (USPIS). These records identified two IP addresses (76.186.71.235 and 76.185.80.115), which were used to track the parcel containing promethazine with codeine shipped from Texas to case agents in Milwaukee. These records also identified one IP address (47.205.233.129) used multiple times to track the carisoprodol and Xanax parcels. The Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address looks like a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer connected to the Internet is assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

24.     Case agents received records from Frontier Communications related to IP address 47.205.233.129, which was used to track the carisoprodol and Xanax parcels, pursuant to a DEA

10

administrative subpoena. According to those records, the subscriber and location for this IP address was listed to Charles Morelli and Arlene Morelli at 8360 Sycamore Drive, New Port Richey, Florida.

25.     Case agents received records from Charter Communications related to IP addresses 76.185.80.115 and 76.186.71.235, used to track the parcel containing promethazine with codeine, pursuant to a DEA administrative subpoena. According to those records, the subscriber and location for this IP address 76.185.80.115 was Newport Investments at 3630 West Pioneer Parkway, Suite 100, Pantego, Texas 76013-4534 with a listed e-mail address of Briantally33@gmail.com, and the subscriber and location for this IP address 76.186.71.235 was Nirmal Saran at 2901 Serenity Court, Arlington, Texas 76016-2029, with listed phone number of (817) 818-8780 and e-mail address of 22joesaran@gmail.com.

26.     Case agents accessed files available to DEA and spoke with agents in Texas.  Case agents identified the likely shipper of the promethazine with codeine as **RAKESH JYOTI SARAN**, also known as **JOHAR SARAN**.

27.     On November 30, 2006, SARAN was convicted of conspiracy to commit health care fraud, mail and wire fraud, money laundering, and illegal monetary transaction, in violation of Title 18, United States Code, Section 371, mail fraud, in violation of Title 18, United States Code, Section 1341, and conspiracy to distribute controlled substances, in violation of Title 21, United States Code, Sections 846, 841(a)(1), and 841(b)(1)(D) in *United States v. Saran*, Case No. 05-CR-240 in the U.S. District Court for the Northern District of Texas. As a part of that agreement, SARAN stipulated that between June 28, 1999 and continuing through September 21, 2005, he fraudulently purchased pharmaceutical products from wholesalers at fraudulently obtained discount prices for resale to gray market wholesalers at a substantial profit. ECF No. 398. He also admitted that he knowingly and intentionally conspired with other co-conspirators to engage in the illegal distribution of controlled substances, including but not limited to, promethazine cough syrup with codeine, phentermine, hydrocodone, and alprazolam. *Id.* That stipulation details that he and his co-conspirators distributed controlled substances to Internet drug seeking customers

without legitimate prescriptions, that SARAN knew that controlled substances would be distributed to Internet customers without the existence of a doctor-patient relationship, and that SARAN knew the Internet controlled substance distributions were outside the scope of professional practice and not for a legitimate medical purpose. ECF No. 398.

28.     On December 10, 2009, SARAN was sentenced to 12 years in prison, 3 years of supervised release, a $400 mandatory special assessment, and $68 million in restitution. **JOHAR SARAN** is the son of Nirmal Saran, the account holder of the IP address used to track the drug parcel.

29.     Case agents received records from T-Mobile related to phone number (817) 818-8780, in response to a DEA administrative subpoena. This is the phone number on the IP address account used to check the tracking of a drug parcel shipped from Arlington, Texas to case agents. These records identified the subscriber as **JOHAR SARAN** registered to the address 2901 Serenity Court, Arlington, Texas 76016.

30.     Case agents reviewed records from USPIS for the address 3630 West Pioneer Parkway, Pantego, Texas. Those records revealed that this address is a building with office fronts for lease. USPIS checked parcels coming to the various suites in this building and found a parcel shipped on or about July 15, 2019 to **JOHAR SARAN** at 3630 West Pioneer Parkway, Suite 111, Pantego, Texas 76013-4534.

31.     On July 18, 2019, case agents received records from RIA, the money remitter for Walmart2Walmart money transfers, pursuant to a DEA administrative subpoena. HAMMOND had previously stated that one accepted form of payment for drug purchases is "Walmart2Walmart." These records revealed approximately 56 transactions where people throughout the United States transferred funds, with amounts consistent with the purchase of pharmaceuticals, to RAYMOND HAMMOND from May 16, 2018 through June 26, 2019. The records provided HAMMOND's previous address in Clearwater, Florida and his phone number (727) 420-1576.  This is the same phone number used to purchase controlled substances. Case agents viewed video surveillance of the person who received funds in June 2019, under the name of "RAYMOND HAMMOND" at Walmart in Port Richey, Florida.  The

person who received the funds was, in fact, RAYMOND HAMMOND. According to Walmart employees, HAMMOND would have been required to show a photo identification each time funds were received. This Walmart is located 1.6 miles from HAMMOND's residence located at 8360 Sycamore Drive, New Port Richey, Florida 34654.

32.     On August 16, 2019, HAMMOND messaged undercover case agents on WhatsApp from (727) 420-1576. HAMMOND provided a list of currently available drugs. He said some of the drugs are already in the United States, while the rest are bulk shipped into the United States from overseas. Once in the country, these drugs are repackaged and shipped to customers. HAMMOND discussed the quality of some of the drugs and said he would give discounted prices for larger orders. HAMMOND said he had the following drugs for sale and provided photographs:

- Xanax (a schedule IV controlled substance)

- Valium (a schedule IV controlled substance)

- Lorazepam (a schedule IV controlled substance)

- Clonazepam (a schedule IV controlled substance)

- Temazepam (a schedule IV controlled substance)

- Etizolam (an unapproved non-controlled substance in the U.S.)

- Oxycodone (a schedule II controlled substance)

- Suboxone (a schedule III controlled substance)

- Hydrocodone (a schedule II controlled substance)

- Promethazine with codeine (a schedule V controlled substance)

- Tussionex (a schedule II controlled substance)

- Soma (a schedule IV controlled substance)

- Tramadol (a schedule IV controlled substance)

- Pregabalin (a schedule V controlled substance)

13

- Morphine (a schedule II controlled substance)

33. On August 23, 2019, case agents conducted an undercover purchase from HAMMOND on WhatsApp at phone number (727) 420-1576. Case agents purchased 525 tablets of hydrocodone 10mg (a schedule II controlled substance) and 114 tablets of Xanax 2mg (a schedule IV controlled substance). Due to the hydrocodone continuously being seized by customs, HAMMOND, instead, shipped case agents 525 tablets of Adderall 30mg (a schedule II controlled substance). Due to the delay, case agents were also shipped 20 different tablets of Xanax 2mg (a schedule IV controlled substance), 100 tablets of Soma 500mg (a schedule IV controlled substance), and 200 tablets of Etizolam 1mg (an unapproved non-controlled substance) for free. In connection with the purchase, case agents were instructed on WhatsApp to wire money by Zelle to a bank account associated with email address arlenezelle@gmail.com.

34. HAMMOND told case agents that the drugs were now going to be stockpiled with his partner in Texas, and the drugs would be shipped to the undercover agent and other customers from Texas. HAMMOND asked the undercover agent for suggestions on which drugs should be kept in stock in Texas for fast shipping. HAMMOND also offered the undercover agent 97% potent THC vape cartridges, which his friend manufacturers in Florida from THC oil shipped from Colorado.

35. HAMMOND messaged the undercover agent a group message containing six tracking numbers along with descriptions of the drug types in each parcel and the shipping country. The parcels were shipped from the United Kingdom, Philippines, and India to Texas before being reshipped to case agents. Case agents received shipments of the 525 tablets of Adderall 30mg, 100 tablets of carisoprodol 500mg, 114 tablets of Xanax 2mg, 20 additional tablets of Xanax 2mg, and 200 tablets Etizolam 1mg. All of the parcels containing these drugs were shipped from the Arlington, Texas area. The medications were sent to the DEA laboratory in Chicago, and some of the test results are pending. The 114 tablets of Xanax 2mg tested positive for the presence of diazepam (a schedule IV controlled substance) and ketamine (a schedule III controlled substance), the 20 tablets of Xanax 2mg tested positive for the presence of

14

alprazolam (a schedule IV controlled substance), and the 525 tablets of Adderall 30mg tested positive for the presence of methamphetamine (a schedule II controlled substance).

36.     Case agents submitted the sealed envelope that contained the 20 tablets of Xanax to the Wisconsin State Crime Laboratory.  The Wisconsin Crime Laboratory identified a DNA profile from the sealed portion of the envelope where one would normally lick the envelope. Upon entering this DNA profile into CODIS, this DNA profile matches **JOHAR SARAN**'s DNA profile.

37.     Case agents received records from the U.S. Postal Inspection Service. These records revealed that all of the parcels shipped from overseas to Texas were shipped to 3630 West Pioneer Parkway, Suite 111, Pantego, Texas 76013.  All of these parcels had the tracking number checked by IP addresses assigned to 3630 West Pioneer Parkway, Suite 100, Pantego, Texas 76013 and 8360 Sycamore Drive, New Port Richey, Florida. In addition, all of the reshipped drug parcels, except for one Xanax parcel, shipped from Texas to case agents in Milwaukee also had the tracking checked by IP addresses assigned to 3630 West Pioneer Parkway, Suite 100, Pantego, Texas 76013 and 8360 Sycamore Drive, New Port Richey, Florida.  The remaining Xanax parcel had the tracking checked only by an IP address assigned to 8360 Sycamore Drive, New Port Richey, Florida.

38.     Case agents were able to monitor the shipping status of the parcel (tracking number EE181973228PH), which HAMMOND said contained Xanax intended for case agents.  Case agents notified DEA and USPIS agents in Texas that the parcel was en route from the Philippines, and a controlled delivery of this parcel was conducted. On September 16, 2019, an undercover U.S. Postal Inspector delivered this parcel directly to 3630 West Pioneer Parkway, Suite 111, Pantego, Texas 76013-4534. **JOHAR SARAN** opened the door to Suite 111, claimed his name was "Mike Peters," an alias used on some of the drugs parcels, and signed "Mike Peters" in exchange for receiving the parcel containing suspected Xanax tablets.

39.    Case agents observed a gray 2008 Mazda CX-9 displaying Texas truck license plate LRC9159 parked at 3630 West Pioneer Parkway, Pantego, Texas 76013. A registration check revealed this vehicle is registered to Reshma Siddiqui Saran at 2901 Serenity Court, Arlington, Texas.  On this same date, RAYMOND HAMMOND notified case agents that the Xanax parcel arrived in Texas. The suspected Xanax tablets were then sent by U.S. Postal Service to case agents in Milwaukee.

40.    Case agents located the parcel (tracking number CD432262936IN), which was shipped from India to 3630 West Pioneer Parkway, Suite 111, Pantego, Texas 76013. According to HAMMOND, that parcel contained the initial 525 tablets of hydrocodone 10mg that case agents ordered. Case agents found this parcel was, in fact, seized by U.S. Customs, and it was subsequently turned over to case agents. Case agents found this parcel contained blister packs identifying the approximately 1,000 tablets as hydrocodone 10mg (a schedule II controlled substance). The medication was sent to the DEA laboratory in Chicago, and the suspected hydrocodone tablets tested positive for the presence of tramadol (a schedule IV controlled substance) instead. Case agents reviewed U.S. Postal Inspection Service records and found the tracking of this parcel was checked utilizing IP addresses assigned to 3630 West Pioneer Parkway, Suite 100, Pantego, Texas 76013 and 8360 Sycamore Drive, New Port Richey, Florida.

41.    On August 29, 2019, case agents reviewed U.S. Postal Inspection Service records related to IP address 47.205.233.129. This is an IP address that was previously used to check the tracking information for some of the drug parcels and is associated with 8360 Sycamore Drive, New Port Richey, Florida.  The U.S. Postal Inspection Service records show that this IP address was used to track 126 total parcels over the previous 45 days. These 126 parcels were primarily shipped from India, Singapore, United Kingdom, and Philippines to various cities throughout the United States.

42.    On September 3, 2019, case agents received records from WhatsApp related to RAYMOND HAMMOND's phone number (727) 420-1576, in response to a DEA administrative subpoena. The records identified the account holder information as the following:

a. Name: "RAYMOND HAMMOND 8am-8pmET"

b. Device: Apple iPhone 7

c. IP Address: 47.205.227.30

Case agents know the regular hours RAYMOND HAMMOND is available to take orders is from 8:00 a.m. to 8:00 p.m. (EST), consistent with the name registered to his WhatsApp account. Case agents know the IP address on file with this WhatsApp account is assigned to Charles Morelli at 8360 Sycamore Drive, New Port Richey, Florida 34654-5629.

43.    On September 19, 2019, DEA agents in Texas conducted surveillance at 3630 West Pioneer Parkway, Pantego, Texas 76013. Case agents observed **JOHAR SARAN** walk from the office building carrying a manila envelope and four or five large envelopes, and enter the gray 2008 Mazda CX-9. SARAN drove to a U.S. Post Office in Arlington, Texas. SARAN carried the envelopes into the post office and then exited without the envelopes a short time later.

44.    On September 20, 2019, DEA agents, again, conducted surveillance at 3630 West Pioneer Parkway, Pantego, Texas 76013.  Case agents observed SARAN walk from the office and enter the gray 2008 Mazda CX-9. SARAN drove to a Walmart where he purchased shipping envelopes. **JOHAR SARAN** drove back to 3630 West Pioneer Parkway, Pantego, Texas 76013, where he went inside the building. SARAN later left the building carrying two plastic bags containing shipping envelopes and drove to a post office in Arlington, Texas. SARAN carried these envelopes into the post office at 3:35 p.m., shipped the envelopes, and exited the post office at 3:44 p.m. According to tracking records, a drug parcel (tracking number 950011184069263466321) was shipped from Arlington, Texas on this date at 3:39 p.m. to Milwaukee case agents in response to an undercover controlled buy. After SARAN shipped these parcels, he drove back to 3630 West Pioneer Parkway, Pantego, Texas 76013.

45.    On September 30, 2019, DEA agents, again, conducted surveillance at 3630 West Pioneer Parkway, Pantego, Texas 76013. Case agents observed SARAN walk from the office building carrying a

17

plastic bag containing several manila envelopes. SARAN entered the gray 2008 Mazda CX-9, and drove to a U.S. Post Office in Arlington, Texas. SARAN carried these envelopes into the post office and a short time later exited the post office without the envelopes.

46. On October 4, 2019, case agents reviewed telephone toll records from (817) 818-8780. This phone number was identified as belonging to **JOHAR SARAN** according to T-Mobile records, which were received pursuant to a DEA administrative subpoena**.** Case agents found communication between **JOHAR SARAN** and RAYMOND HAMMOND at (727) 420-1576, the phone number that case agents use to conduct the controlled buys with HAMMOND. Case agents also found communication between SARAN and HAMMOND at (727) 514-3975. In addition, case agents noted SARAN communicating with a post office in India, an American shipping company, and multiple medical facilities.

47. On October 13, 2019, U.S. Customs and Border Protection (CBP) seized a parcel shipped from Germany to 3630 West Pioneer Parkway, Suite 111, Pantego, Texas 76013. CBP searched the contents according to their standard operating procedures and located approximately 600 tablets of modafinil 200mg (a schedule IV controlled substance). This parcel was turned over to case agents.

48. On October 15, 2019, case agents conducted an undercover purchase from HAMMOND using WhatsApp phone number (727) 420-1576. Case agents purchased 310 tablets of Adderall 30mg (a schedule II controlled substance), 20 tablets of oxycodone 80mg (a schedule II controlled substance), 21 tablets of alprazolam 2mg (a schedule IV controlled substance), 30 tablets of diazepam 10mg (a schedule IV controlled substance), 8 tablets of temazepam 30mg (a schedule IV controlled substance), 19 tablets of zolpidem 10mg (a schedule IV controlled substance), and 100 tablets of etizolam 1mg (an unapproved non-controlled substance). In connection with the purchase, case agents were instructed by WhatsApp to wire money using Zelle to a bank account associated with email address arlenezelle@gmail.com. HAMMOND advised case agents that his partner in Texas would be shipping the drugs. A short time

18

later, HAMMOND sent case agents a photograph of all the purchased drugs and the shipping label made out to the undercover agent. Case agents received the shipment of the 310 tablets of Adderall 30mg, 20 tablets of oxycodone 80mg, 21 tablets of alprazolam 2mg, 30 tablets of diazepam 10mg, 8 tablets of temazepam 30mg, 19 tablets of zolpidem 10mg, and 100 tablets of etizolam 1mg. The parcel containing these drugs was shipped from Arlington, Texas.  The medications were sent to the DEA laboratory in Chicago, and some of the test results are pending.  The 310 tablets of Adderall 30mg tested positive for the presence of methamphetamine (a schedule II controlled substance), the 20 tablets of oxycodone 80mg tested negative for any controlled substance, and the 21 tablets of alprazolam 2mg tested positive for the presence of both methamphetamine (a schedule II controlled substance) and alprazolam (a schedule IV controlled substance).

49.     Case agents received records from the U.S. Postal Inspection Service.  These records identified the drug parcel's tracking was checked from IP address 47.205.228.97 associated with 8360 Sycamore Drive, New Port Richey, Florida. Case agents received records from U.S. Postal Inspection Service related to the shipping and payment for this drug parcel. Case agents acquired video surveillance showing that **JOHAR SARAN** was the person who shipped this drug parcel to case agents, along with many other parcels. That shipping was paid for with a debit card. According to bank records, that debit card is linked to the Wells Fargo account belonging to **JOHAR SARAN** with a listed address of 2901 Serenity Court, Arlington, Texas 76016-2029.

50.     On December 6, 2019, case agents conducted an undercover purchase from RAYMOND HAMMOND using WhatsApp phone number (727) 420-1576. Case agents purchased 270 tablets of Adderall 30mg (a schedule II controlled substance) and 63 tablets of Valium 10mg (a schedule IV controlled substance), and were provided a free sample of 20 tablets of Etizolam 3mg (an unapproved non-controlled substance).  In connection with the purchase, case agents were instructed on WhatsApp to wire money by Zelle to a bank account associated with email address arlenezelle@gmail.com.

RAYMOND HAMMOND advised case agents that his partner in Texas would ship the drugs. A short time later, RAYMOND HAMMOND sent case agents a photograph of all of the purchased drugs and the shipping label made out to the undercover agent. Case agents received shipment of the 270 tablets of Adderall 30mg, 63 tablets of Valium 10mg, and 20 tablets of etizolam 3mg. The parcel containing these drugs was shipped from Texas. The medications were sent to the DEA laboratory in Chicago, and the 270 tablets of Adderall 30mg tested positive for the presence of methamphetamine (a schedule II controlled substance). The suspected Valium and Etizolam test results are pending.

51. Case agents had an in-depth conversation with RAYMOND HAMMOND during the controlled buy on December 6, 2019. HAMMOND said he has two close friends who live near him in Florida. One friend manufacturers THC vape cartridges (a schedule I controlled substance) and the other friend manufacturers DMT, also known as dimethyltryptamine (a schedule I controlled substance), which is also placed into vape cartridges. HAMMOND said both of these friends are professionals, HAMMOND said he has invested in both of these "labs," and he offered to ship case agents THC vape cartridges and DMT vape cartridges when they are ready. HAMMOND provided a list of multiple other controlled substances that he claimed are currently in stock in Texas waiting to be shipped. HAMMOND stated that he has been a 50% owner of a pharmacy located in the United Kingdom for the past 18 years, and the pharmacy produces alprazolam and etizolam tablets for him with his own logo imprinted on the tablets. HAMMOND sent case agents a photograph of a tablet with a logo of two "L"s, likely due to the fact RAYMOND HAMMOND goes by the name "Larry." He further stated he had Xanax tablets bypass U.S. Customs and Border Protection because they were packaged in children's vitamins bottles.

52. Case agents have reviewed U.S. Postal Inspection Service records and identified at least 37 parcels that have been shipped to 3630 West Pioneer Parkway, Suite 111, Pantego, Texas 76013-4534 and addressed to aliases used by **JOHAR SARAN** since approximately July 2019. These parcels are primarily shipped from countries such as Singapore and Germany, which are the known shipping locations

for the controlled substances. The customs declarations attached to the parcels primarily identify the contents as supplements or tablets. The majority of these parcels have had the tracking checked using IP addresses which are associated with the following addresses:

a. 2901 Serenity Court, Arlington, Texas 76016, **JOHAR SARAN**'s residence

b. 3630 West Pioneer Parkway, Suite 100, Pantego, Texas 76013-4534, which is the address listed for wifi accessible at **JOHAR SARAN**'s office

c. 8360 Sycamore Drive, New Port Richey, Florida 34654-5629, RAYMOND HAMMOND's residence.

53. On December 29, 2019, case agents conducted an undercover purchase from RAYMOND HAMMOND using WhatsApp phone number (727) 420-1576. Case agents purchased 94 tablets of Adderall 30mg (a schedule II controlled substance), 61 tablets of Ambien 10mg (a schedule IV controlled substance), and 360 tablets of zolpidem 10mg (a schedule IV controlled substance). In connection with the purchase, case agents were instructed on WhatsApp to wire money by Zelle to a bank account associated with email address arlenezelle@gmail.com. HAMMOND advised case agents that his partner in Texas would ship the drugs. A short time later, HAMMOND sent case agents a photograph of all of the purchased drugs and the shipping label addressed to the undercover agent. Case agents received the shipment of the 94 tablets of Adderall 30mg, which is suspected to contain methamphetamine, 61 tablets of Ambien 10mg, and 360 tablets of zolpidem 10mg. The parcel containing these drugs was shipped from Texas. The medications were sent to the DEA laboratory in Chicago, and the 94 tablets of Adderall 30mg tested positive for the presence of methamphetamine (a schedule II controlled substance). The suspected Ambien and zolpidem test results are pending. HAMMOND had conversations with the undercover agent during this controlled buy, and HAMMOND said the minimum purchase of Adderall that he is required to make from his supplier is 5,000 tablets.

21

54.     On January 28, 2020, case agents conducted an undercover purchase from RAYMOND HAMMOND using WhatsApp phone number (727) 420-1576. Case agents purchased 560 tablets of Adderall 30mg (a schedule II controlled substance) and 40 tablets of alprazolam 1mg (a schedule IV controlled substance).  In connection with the purchase, case agents were instructed on WhatsApp to wire money by Zelle to **JOHAR SARAN** to a bank account associated with email address frisco22@yahoo.com. Case agents were told never to send payment to Arlene Morelli again, to never tell the bank what is being purchased, and to never make a notation in the Zelle payment of what is being purchased.  HAMMOND advised case agents that his partner in Texas would ship the drugs. A short time later, HAMMOND sent case agents a photograph of all of the purchased drugs and the shipping label addressed to the undercover agent. Case agents received the shipment of the 560 tablets of Adderall 30mg and 40 tablets of alprazolam 1mg.  The parcel containing these drugs was shipped from Texas. The medications were sent to the DEA laboratory in Chicago, and the 560 tablets of Adderall 30mg tested positive for the presence of methamphetamine (a schedule II controlled substance) and the suspected alprazolam tablets tested positive for the presence of alprazolam (a schedule IV controlled substance). Case agents later acquired video surveillance from the U.S. Post Office in Arlington, Texas from where this drug parcel was shipped on January 28, 2020. The video surveillance shows **JOHAR SARAN** handing approximately ten parcels (including this drug parcel) to the U.S. Post Office employee to ship. HAMMOND had conversations with the undercover agent during this controlled buy, and HAMMOND said within three days that he went from 4,000 tablets of the Adderall in stock to 1,750 tablets remaining, prior to case agents purchasing 560 tablets.

55.     On March 3, 2020, case agents received records from Public Storage, pursuant to a DEA administrative subpoena, requesting any storage units funded by Bank of America account ending in #4683 belonging to **JOHAR SARAN**.  Case agents requested these records from Public Storage because other records indicated that **JOHAR SARAN** was using his Bank of America account ending in #4683 to

pay for drug parcels with the U.S. Postal Service, to pay for a suspected mailbox at a UPS Store in Arlington, Texas, to receive payments from RAYMOND HAMMOND, and to rent a storage unit with Public Storage.

56.     Public Storage's records showed that **JOHAR SARAN**'s bank account was used to rent Unit #3305, a five foot by five foot storage unit, at Public Storage located at 2300 West Park Row, Pantego, Texas 76013, with the following rental information:

- Rental date: December 11, 2019

- Customer name: **JOHAR SARAN**

- Customer business name: Jay's Fastener's, an entity that **JOHAR SARAN** lists on suspected drug parcels

- Customer address: 8401 Mansfield Highway, Kennedale, Texas 76060, a fictitious address **JOHAR SARAN** uses as a return address on drug parcels

- Customer phone: (817) 818-8780, a phone number belonging to **JOHAR SARAN**

- Emergency/Alternate contact: Mike Peters, an alias used by **JOHAR SARAN** on drug parcels.

57.     On March 13, 2020, case agents conducted an undercover purchase from RAYMOND HAMMOND using WhatsApp phone number (727) 420-1576. Case agents purchased 400 tablets of Adderall 30mg (a schedule II controlled substance). In connection with the purchase, case agents were instructed on WhatsApp to wire money by Zelle to Charles Morelli to a bank account associated with email address checkzelle@gmail.com. Case agents were told payment and shipping options changed for the safety of HAMMOND and **JOHAR SARAN**, such that only the U.S. Postal Service—not FedEx or UPS—would be used for shipping. HAMMOND also said his shipping partner in Texas needed to create a new shipping account, and this drug parcel would, therefore, be shipped by his Texas partner, via postage, and not with a tracking number.  A short time later, HAMMOND sent case agents a photograph

23

of the purchased drugs and the shipping label made out to the undercover agent. Case agents received the shipment of the 400 tablets of Adderall 30mg. The parcel containing these drugs was shipped from Texas. The medication was sent to the DEA laboratory in Chicago, and the 400 tablets of Adderall 30mg tested positive for the presence of methamphetamine (a schedule II controlled substance). HAMMOND had conversations with the undercover agent during this controlled buy, and HAMMOND identified ten different medications available for purchase. HAMMOND was asked by the undercover agent how his drug sales were being affected by the COVID-19 lockdowns. HAMMOND said international parcels were still arriving with only a short delay, and customer sales for domestic parcels has increased because customers want their drugs faster.

58. On March 16, 2020, case agents received records from Stamps.com pursuant to an administrative subpoena to identify the account funding the shipping costs of previously identified U.S. Postal Service drug parcels. This account was opened on November 13, 2019 and was closed on March 11, 2020 and was registered to **JOHAR SARAN** with a billing address at 2901 Serenity Court, Arlington, Texas 76016—consistent with RAYMOND HAMMOND stating his partner in Texas needed to open a new shipping account in March 2020. The records identify all the parcels paid for by this Stamps.com account, including the receiver's name and address. Some of the drug parcels purchased by the undercover agent were contained on this parcel list, and case agents noted that other parcels were shipped to multiple customers in Wisconsin. In total, there were approximately 696 suspected drug parcels paid for using this Stamps.com account from November 13, 2019 through March 11, 2020. Case agents also found a parcel shipped from Texas to RAYMOND HAMMOND at 8360 Sycamore Drive, New Port Richey, Florida 34654 on January 25, 2020, using this Stamps.com account.

59. On April 23, 2020, case agents conducted an undercover purchase from RAYMOND HAMMOND using WhatsApp phone number (727) 420-1576. Case agents purchased 86 tablets of Adderall 30mg (a schedule II controlled substance) and 100 tablets of tramadol 200mg (a schedule IV

24

controlled substance). In connection with the purchase, case agents were instructed on WhatsApp to wire money by Zelle to **JOHAR SARAN** using a bank account associated with email address joezelle3@gmail.com. HAMMOND advised case agents that his partner in Texas would ship the drugs. A short time later, HAMMOND sent case agents a photograph of the purchased drugs and the shipping label addressed to the undercover agent. Case agents received the shipment of the 86 tablets of Adderall 30mg and 110 tablets of tramadol 200mg.  The parcel containing these drugs was shipped from Texas. The medications were sent to the DEA laboratory in Chicago, and the test results are pending. During communications with the undercover agent, HAMMOND complained about the shipping delays of the drugs from overseas to the United States caused by COVID-19. HAMMOND stated he currently had 20,000 tablets in transit to the United States.

60.     On April 24, 2020, case agents reviewed U.S. Postal Service records related to IP address 76.185.80.115. This IP address was previously identified as the IP address at the office spaces located at 3630 West Pioneer Parkway, Pantego, Texas 76013. This includes the office space located at 3630 West Pioneer Parkway, Suite 111, Pantego, Texas 76013, which is under the control of **JOHAR SARAN**. A device connected to IP address 76.185.80.115 was used to track parcel #9475 0112 0108 0963 7253 52, which arrived on April 22, 2020 at **JOHAR SARAN**'s home address located at 2901 Serenity Court, Arlington, Texas 76016. In addition to **JOHAR SARAN** using this IP address to track drug parcels, case agents believe **JOHAR SARAN** used this same IP address to track this personal parcel.

61.     On June 5, 2020, case agents conducted an undercover purchase from RAYMOND HAMMOND using WhatsApp phone number (727) 420-1576. Case agents purchased 235 tablets of Percocet 10mg, which contains oxycodone (a schedule II controlled substance), and 24 tablets of alprazolam 1mg (a schedule IV controlled substance). In connection with the purchase, case agents were instructed on WhatsApp to wire money by Zelle to **JOHAR SARAN** through a bank account associated with email address joezelle3@gmail.com. HAMMOND advised case agents that his partner in Texas

25

would ship the drugs. A short time later, HAMMOND sent case agents a photograph of the purchased drugs and the shipping label addressed to the undercover agent. Case agents received the shipment of the 235 tablets of Percocet 10mg and 24 tablets of alprazolam 1mg. That parcel containing these drugs was shipped from Texas. The medications were sent to the DEA laboratory in Chicago, and the test results are pending. During communications with the undercover agent, HAMMOND provided a list of medications that he currently had in stock and a second list of medications that can be purchased and shipped from overseas to the customer. The undercover agent inquired about purchasing Adderall tablets. HAMMOND said 2,000 Adderall tablets were expected to arrive in one week.

62. On June 23, 2020, case agents conducted an undercover purchase from RAYMOND HAMMOND using WhatsApp phone number (727) 420-1576. Case agents purchased 240 tablets of Adderall 30mg (a schedule II controlled substance) and 50 tablets of tramadol 200mg (a schedule IV controlled substance). In connection with the purchase, case agents were initially instructed on WhatsApp to wire payment to HAMMOND's new Bitcoin account on Monarch Wallet. HAMMOND said that he just opened this account because his Bitcoin account containing $7,000 with Coinbase was recently frozen by Coinbase. Case agents asked to pay instead by Zelle, so HAMMOND directed case agents to wire money by Zelle to Charles Morelli's bank account associated with email address checkzelle@gmail.com. HAMMOND said that his partner in Texas would ship the drugs. A short time later, HAMMOND sent case agents a photograph of the purchased drugs and the shipping label addressed to the undercover agent.

63. According to the tracking information, this drug parcel was not delivered. HAMMOND said that he believed this happened, because they used a fake return address on the drug parcels. Case agents later learned that this drug parcel was not delivered simply because the postage account had insufficient funds.

64. HAMMOND mentioned that three parcels were not delivered and that his partner "Mike," an alias used by **JOHAR SARAN**, was going to the post office to address the problem. **JOHAR SARAN**

resent a second parcel containing 240 tablets of Adderall 30mg and 50 tablets of tramadol 200mg. Case agents ultimately received both drug parcels from Texas for a total of 480 tablets of Adderall 30mg and 100 tablets of tramadol 200mg. HAMMOND said they would mail a pre-paid and pre-labeled shipping envelope to the undercover case agent, so that the undercover case agent could ship one of the drug parcels back to Texas. Case agents received this pre-paid and pre-labeled envelope, which was addressed to Jay's Fasteners, Inc. located at 5904 South Cooper Street, Suite 104, Arlington, Texas 76017-6600, along with a printed instruction sheet about how to ship the drugs. Case agents know that **JOHAR SARAN** uses this business name and mailbox to receive suspected drug parcels. The instructions referenced keeping a portion of the "product" as prearranged with "Larry," an alias used by RAYMOND HAMMOND. Case agents kept both drug parcels and instead sent HAMMOND a second payment to the same Zelle account for Charles Morelli linked to email address checkzelle@gmail.com. The medications were sent to the DEA laboratory in Chicago, and the test results are pending.

65. On July 28, 2020, case agents reviewed records provided by the U.S. Postal Inspection Service to confirm the locations used by HAMMOND and SARAN. Case agents requested a list of all parcels tracked by devices using IP addresses associated with HAMMOND and SARAN. Those records show that a device using IP address 35.136.76.241, assigned to Arlene Morelli at 8360 Sycamore Drive, New Port Richey, Florida 34654, was used to track suspected international and domestic drug parcels 70 times from May 23, 2020 through June 16, 2020. Those records also show that a device using IP address 76.185.80.115, assigned to 3630 West Pioneer Pkwy, Suite 100, Pantego, Texas 76013, was used to track suspected international and domestic drug parcels 284 times from May 26, 2020 through July 27, 2020, and was used to track one personal parcel shipped to SARAN at 2901 Serenity Court, Arlington, Texas 76016. Those records show that a device using IP address 76.186.77.10, assigned to Nirmal Saran at 2901 Serenity Court, Arlington, Texas 76016, was used to track suspected international and domestic drug

parcels 37 times from May 25, 2020 through July 22, 2020 and was used to track some personal parcels shipped to SARAN at 2901 Serenity Court, Arlington, Texas 76016.

66. On August 4, 2020, case agents conducted an undercover purchase from RAYMOND HAMMOND, initially using WhatsApp phone number (727) 420-1576. HAMMOND directed the undercover agent to stop using WhatsApp because the communication service is no longer secure. HAMMOND directed the undercover agent to use Signal, another cross-platform encrypted messaging service, to communicate with him at (727) 420-1576. Case agents purchased 240 tablets of Percocet 10mg, which contains oxycodone (a schedule II controlled substance) and 55 tablets of diazepam 10mg (a schedule IV controlled substance). In connection with the purchase, case agents were instructed on Signal to wire money by Zelle to **JOHAR SARAN** through a bank account associated with email address joezelle3@gmail.com. A short time later, HAMMOND sent case agents a tracking number for this parcel. Case agents received the shipment of the 240 tablets of Percocet 10mg and 55 tablets of diazepam 10mg. The parcel containing these drugs was shipped from Texas. The medications were sent to the DEA laboratory in Chicago, and the test results are pending. During communications with the undercover agent, HAMMOND provided a list of medications he currently had in stock and a second list of medications that can be purchased and shipped from overseas directly to the customer. The undercover agent inquired about Adderall. HAMMOND said that his Adderall source overseas might no longer be available, because of legal pressure from the maker of Adderall. HAMMOND said he might have already acquired a new supplier for Adderall.

67. Case agents have learned from surveillance, records, and an interview that 3630 West Pioneer Parkway, Suite 100, Pantego, Texas 76013 is an office building with suites for rent. The building management Newport Properties, managed by Brian Talley, provides free wifi internet to all the renters. Suite 100 does not actually exist and is just an address used by management for the purposes of the internet

service. This explains why the IP address used to check drug parcels is linked to **JOHAR SARAN**, the renter of Suite 111.

68.    On August 7, 2020, case agents reviewed the Texas Department of Transportation files and found **JOHAR SARAN** reported 2901 Serenity Court, Arlington, Texas 76016 as his home address.

69.    Case agents, utilizing grand jury subpoenas, were able to identify the J.P. Morgan Chase bank account belonging to Arlene Morelli. This account is used by RAYMOND HAMMOND, in that HAMMOND has directed case agents and others to send drug payments to this account. Case agents identified other accounts used by HAMMOND to receive and transfer drug proceeds in the names of others, including Arlene Morelli, Charles Morelli, Doug Johnson Leather Crafts LLC, and Larry's Jewels & Gems LLC. A large amount of the funds in these accounts is transferred overseas, including to known pharmaceutical suppliers. Other funds are transferred to **JOHAR SARAN**'s Bank of America account and Wells Fargo account.

70.    **JOHAR SARAN** also uses his Wells Fargo account to pay rent to Newport Properties, the building management for the office located at 3630 West Pioneer Parkway, Suite 111, Pantego, Texas 76013. SARAN also transfers funds to family members and into a Coinbase account belonging to **JOHAR SARAN**. Once the funds are in the Coinbase account, SARAN purchases Bitcoins and transfers the Bitcoins to other unidentified Bitcoin wallets, or he returns the funds back into his Wells Fargo bank account as a form of "cleaning" his drug proceeds.  Case agents were able to trace some of the funds **JOHAR SARAN** sent, via his Coinbase account, to a Binance cryptocurrency account belonging to Jeetendra Belani, a pharmaceutical reshipper from Nagpur, India. The Food and Drug Administration arrested Jeetendra Belani in approximately June 2019, and he was subsequently convicted of conspiracy to import controlled substances, smuggling, and money laundering in the Western District of Pennsylvania.

71.     Based on the investigation described above, case agents believe that **JOHAR SARAN** receives customer orders from RAYMOND HAMMOND, accepts bulk controlled substances at his office and other locations, breaks down the bulk product, prepares the drug parcels and shipping labels addressed to customers, sends a picture of the prepared drugs to HAMMOND, and ships the drug parcels to customers via the U.S. Postal Service and other parcel services.

## CONCLUSION

72.     Based on the information and facts above, I submit that there is probable cause to believe that **Rakesh Jyoti Saran**, a.k.a. **Johar Saran**, has violated Title 21, United States Code, Sections 841(a)(1), 841(h), 843(c)(2)(A), and 846.